IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

03 DEC 19 AM 10: 20



LISA KILLINGSWORTH,  )
     )
    Plaintiff,  )  CIVIL ACTION NO.
     )  03-AR-191-S
v.  )
     )
LOCAL 78 OF THE INTERNATIONAL  )
ALLIANCE OF THEATRICAL STAGE  )
EMPLOYEES,  )
     )
    Defendant.  )

ENTERED
DEC 19 2003

## MEMORANDUM OPINION

Before the court is the motion of defendant, Local 78 of the International Alliance of Theatrical State Employees ("Local 78"), for summary judgment. Plaintiff, Lisa Killingsworth ("Killingsworth"), claims that Local 78 discriminated against her on the basis of her sex by non-renewing her union membership, denying her job assignments, retaliating against her for rebuffing sexual advances, and subjecting her to a sexually hostile environment. She brings these claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII").[1] Local 78 seeks summary judgment on all of Killingsworth's claims.

---

[1] Killingsworth's brief in opposition, solely addresses her job-assignments and hostile-environment claims. She has effectively abandoned her membership and retaliation claims. Local 78 is, accordingly, entitled to summary judgment on the abandoned claims.

1



## Material Facts

Local 78 is a chartered local of the International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists & Allied Crafts of the United States and Canada ("IATSE"), an international union with over 100,000 members. It exercises independent authority over its day-to-day operations and acts as what is commonly known as a "hiring hall." Members and non-members are placed with employers that request Local 78 to fill their positions. Workers consider themselves employees of Local 78 and take direction from a job steward supplied by Local 78. Checks are disbursed to workers by Alabama Stage Productions, Inc., a company wholly owned by the members of Local 78.

Local 78 maintains three referral lists that categorize workers into classes A, B, and C. Anyone can qualify to be placed on the C list. Workers who have worked at least 500 hours on Local 78 jobs and have completed requisite educational programs qualify for the B list. In order to reach the A list, an individual must have worked at least 1,500 hours on Local 78 jobs and have completed educational programs beyond those required for the B list. In placing workers with employers, Local 78 first attempts to contact and place workers on the A list. If workers on the A list are unavailable and the employer's needs have not yet been met, Local 78 moves on to the

B list and, finally, the C list.

Killingsworth, a female, has been listed on Local 78's referral list since 1995. She began on the B list. In September 2000, Killingsworth applied for membership with Local 78. Local 78 notified her in a letter dated April 8, 2001 that her application had been rejected. On July 2, 2001, Allen Langston moved for reconsideration of Killingsworth's application. The motion failed. On December 19, 2001, Killingsworth's application was reviewed a third time, but not accepted.

During this time, Local 78 assigned Killingsworth to several jobs. Killingsworth complains that her breasts have been pinched or groped "just about every time" she went to a job. Male workers frequently invited her to hold, play with, or suck their "dick." Co-workers and members of the Local 78 were aware of this on-the-job conduct toward Killingsworth and other females. In her opposition brief, Killingsworth raises specific complaints regarding two co-workers, Tim McClendon and William Moore.

Killingsworth says that McClendon, a male, rubbed her back and asked her to pose naked for him on several occasions. She never made a specific complaint about McClendon to a supervisor. Moore, also a male, told Killingsworth he wanted to have sex with her and indicated that he liked "doing it up the butt" to pretty blonde-haired girls. Following work on one occasion, Moore followed Killingsworth to her car, pinned her car in the parking

lot, and suggested they have sex.

Killingsworth complained about Moore's conduct to her job steward, Kevin Russell, a male, but he said "he didn't want to hear it." She later complained to the president of Local 78, Doug DeVille, a male. J.T. Wilkins, a male and Local 78's vice-president, investigated Killingsworth's claims by asking other union members if they had witnessed any harassment. Wilkins never interviewed Killingsworth or any of the people she identified as having witnessed the events. Moore received a six-month suspension for being drunk. Moore continued to work on every job Killingsworth worked, despite DeVille's statement that Killingsworth would no longer have to work with Moore.

On June 25, 2002, Killingsworth inquired as to the status of her Local 78 membership application. Local 78 responded that she had not requested reconsideration since the April 8, 2001 denial. This response came shortly after Killingsworth complained to Scott Haskell, a male and District 7 Secretary/Treasurer for IATSE on July 8, 2002 that she was being denied membership and assignments because of her gender. Haskell forwarded her letter to IATSE's international president, but took no other action. Russell told Killingsworth on August 3, 2002 that everyone was mad at her for sending a complaint letter to international.

On October 17, 2002, Killingsworth filed a charge of discrimination with the Equal Employment Opportunity Commission

4

("EEOC"). Also in the fourth quarter of 2002, Local 78 adopted its first anti-harassment policy. The policy is not well disseminated and instructs victims to make complaints to the general secretary treasurer of the IATSE. At Local 78's December 2002 meeting it voted to accept Killingsworth's application for membership.

## Analysis

The court, when considering Local 78's motion for summary judgment, views the evidence in the light most favorable to Killingsworth. Accordingly, the court accepts as true Killingsworth's evidence and all factual inferences arising therefrom. There is no genuine issue for trial only if the record taken as a whole could not lead a rational trier of fact to find for Killingsworth. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Employers cannot discriminate on the basis of sex. This prohibition extends to employers, employment agencies, and labor organizations. 42 U.S.C. § 2000e-2. Sexual harassment can constitute sex discrimination. See *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244-45 (11th Cir.1999) (en banc). "Generally, sexual harassment comes in two forms: harassment that does not result in a tangible employment action (traditionally referred to as 'hostile work environment' harassment), and harassment that does result in a tangible employment action (traditionally referred to

5

as 'quid pro quo' harassment)." *Johnson v. Booker T. Washington Broad. Service*, 234 F.3d 501, 508 (11th Cir.2000). The hostile-work-environment cause of action arises from the phrase "terms, conditions, or privileges of employment," found in the subsection defining unlawful practices of employers. 42 U.S.C. § 2000e-2(a)(1); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 2074 (2002). Local 78 contends that Killingsworth's hostile-environment claim fails in the first instance because her relationship with Local 78 is not one of employer and employee. Specifically, Local 78 argues that it only operates a "hiring hall" that procures employees for employers, and does not itself employ individuals.

Title VII liability extends to labor organizations that "cause ... an employer to discriminate against an individual." 42 U.S.C. § 2000e-2(c)(3). Congress has expressly designated operation of a "hiring hall" as coming within Title VII's scope. 42 U.S.C. § 2000e(e). While a "hiring hall" may be liable under 42 U.S.C. § 2000e-2(c), it does not employ individuals and, arguably, cannot be liable for creating a hostile environment under 42 U.S.C. § 2000e-2(a). This intriguing question need not be addresses today because Local 78 does far more than merely procure employees for employers.

In addition to providing employees, Local 78 appoints a job steward to direct employees at the job site. It usually pays

6

employees directly through Alabama Stage Productions, a corporation wholly owned by union members. This arrangement is analogous to companies that place employees to work temporarily with client companies. Temporary companies have been held liable as employers under Title VII. *See Knight v. United Farm Bureau Mut. Ins. Co.,* 950 F.2d 377, 380 (7th Cir.1991) ("In determining whether a business relationship is one of employer-employee [for Title VII purposes], courts look to the economic realities of the relationship and the degree of control the employer exercises over the alleged employee." (citations and internal quotations omitted)); *Mullis v. Mechanics & Farmers Bank,* 994 F.Supp. 680, 685 (M.D.N.C.1997) (finding that a temporary agency and the employer with whom the employee is temporarily placed are both employers for purposes of Title VII); *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 611 F.Supp. 344, 349 (S.D.N.Y.1984), *aff'd,* 770 F.2d 157 (2d Cir.1985) (same). Accepting Local 78's arguments that it was a mere conduit instead of an actual employer would require ignoring its control over Killingsworth.

When Killingsworth and her co-workers were asked who employed them, each believed the employer to be Local 78. Each testified that the job steward directed their work. Furthermore, Killingsworth's claims of sexual harassment arise from co-workers that Local 78 placed from its lists. She made her complaints to the job steward Local 78 assigned and other IATSE officials.

Local 78 even disciplines these workers, like Moore, for their conduct on the job. These are the actions of an employer.[2] At the very least, a reasonable jury could conclude that Local 78 "caused" the alleged discrimination, as defined in 42 U.S.C. § 2000e-2(c)(3).

To establish a *prima facie* case of hostile environment, Killingsworth must show that: (1) she belongs to a protected class; (2) she has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory working environment; (4) the harassment was based on her sex; and (5) there is a basis for holding her employer liable. *See Mendoza*, 195 F.3d at 1245. Local 78 challenges the fourth and fifth elements of Killingsworth's claim.

Title VII prohibits only the type of severe or pervasive sexual harassment that "alter[s] the conditions of the victim's

---

[2] The primary focus of the common-law test for whether an individual is an employee is the right to control. Local 78 and Killingsworth have an established relationship, it directs her where to work, directs her conduct at work, provides for her payment following the work, and disciplines the workers for their conduct. *See* 42 U.S.C. § 2000e(b); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 325 (1992). It is also important to note that Local 78 does not claim Killingsworth was an independent contractor. It merely asserts that she was the employee of the company Local 78 sent her to rather than an employee of Local 78.

employment." *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81 (1998). The inquiry is both subjective and objective. *See Johnson*, 234 F.3d at 509 (citing *Mendoza*, 195 F.3d at 1246). A four-factor analysis guides the objective determination:(1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with the employee's work performance. *Harris v. Forklift Systems*, 510 U.S. 17, 21-22 (1993). Generally, isolated incidents, unless extremely serious, do not amount to discriminatory changes in the terms and conditions of one's employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). This is one of the few cases where summary judgment is inappropriate.

Killingsworth alleges physical contact along with uninhibited sexual advances at nearly every job. Local 78 equates Killingsworth's claims to a litany of cases involving teasing comments and touching of a plaintiff. [Doc. #10 at 22-25]. Our pluralist society cannot completely accommodate the private sense of decency, civility, and morality that some employees possess. *See Mendoza,* 195 F.3d at 1246-47 (collecting cases). But misconduct becomes intolerable when it involves "patterns or allegations of extensive, long lasting, unredressed, and uninhibited sexual threats or conduct that permeated the

9

plaintiffs' work environment." *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 586 (11th Cir.2000) (quoting *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 264 (5th Cir.1999)). One employee, Moore, essentially stalked Killingsworth -- following her from work and pinning her car in a parking lot. Local 78's job steward ignored Killingsworth's complaint. Moore eventually received a six-month suspension for being drunk, according to Local 78, but this neither addresses nor redresses his sexually hostile conduct. Killingsworth and Moore continue to receive the same job assignments.

When, as in this case, the alleged harassment is committed by co-workers, a Title VII plaintiff must show that the employer either knew (actual notice) or should have known (constructive notice) of the harassment and failed to take immediate and appropriate corrective action. *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1278-80 (11th Cir.2002); *see also Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 647 (11th Cir.1997) (requiring employers to take "prompt remedial actions" in response to harassment). Actual notice is always established by proof that management knew of the harassment. *Miller,* 277 F.3d at 1278. Constructive notice, on the other hand, is established when the harassment was so severe and pervasive that management reasonably should have known of it. *Miller,* 277 F.3d at 1278. Killingsworth has met her burden of establishing notice by both

routes. She told the job steward and DeVille of Moore's conduct. The conduct was open and obvious.

Local 78 may nevertheless avoid liability if it can establish that: (1) it exercised reasonable care to prevent and correct promptly any sexual harassment; and (2) Killingsworth unreasonably failed to take advantage of any preventive or corrective opportunities provided by Local 78 or to avoid harm by other means. *See Faragher,* 524 U.S. at 807; *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1297-1300 (11th Cir.2000). Promulgating an anti-discrimination policy that is "comprehensive, well-known to employees, vigorously enforced, and provides alternate avenues of redress" satisfies the employer's burden under the first prong of this liability defense. *Farley v. Am. Cast Iron Pipe Co.,* 115 F.3d 1548, 1554 (11th Cir.1997). But an anti-discrimination policy is not necessary to show reasonable care. *Id.*

Local 78 argues that its anti-discrimination policy precludes liability because Killingsworth failed to take advantage of the policy. The policy was not promulgated, however, until after the alleged harassment and after Killingsworth filed her EEOC complaint. A policy that did not exist at the time of the harassment is no defense.

Alternatively, Local 78 contends that it corrected the action by telling Killingsworth she would no longer have to work

11

with Moore.  Killingsworth testified in her deposition that Moore continues to work on every job to which she is assigned.  Local 78 also had Wilkins investigate Killingsworth's claims by asking other union members if they had witnessed any harassment.  Interestingly, Wilkins never interviewed Killingsworth or any of the people she identified as witnessing the events.  A reasonable jury may find that this fails the reasonable-care standard.  Because Local 78 cannot establish the first prong of its liability defense as a matter of law, summary judgment is inappropriate on this issue.

Killingsworth's other remaining claim is one for disparate treatment.  She must prove through direct or circumstantial evidence that Local 78 acted with discriminatory purpose.  *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1293 (11th Cir.2002).  As is usually the case, Killingsworth has no direct proof of a discriminatory purpose and, therefore, this court's analysis is guided by the *McDonnell Douglas* framework.  Proof of an adverse action is a necessary element of a plaintiff's circumstantial, *prima facie* case.  *Knight v. Baptist Hosp., Inc.*, 330 F.3d 1313, 1316 (11th Cir.2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  She cannot satisfy this element.

Killingsworth alleges that because of her sex, Local 78 failed to place her on its "A" list and, consequently, she received fewer work assignments.  Killingsworth admits, however,

that she "does not know how much work she has missed" due to her placement on the "B" rather than the "A" list. In fact, she presents no evidence of any job or event assignment that Killingsworth missed as a result of her placement on one list or the other. Consequently, there is no disputed issue of material fact on this claim. Judgment as a matter of law for Local 78 is appropriate on Killingsworth's disparate-treatment claim.

## Conclusion

For the foregoing reasons summary judgment for Local 78 will be granted in part. A separate and appropriate order will be entered.

DONE this 19th day of December, 2003.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE